```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
SHAWN SHIELDS,                      :   06 Civ. 1228
                                    :
              Plaintiff,            :
                                    :   COMPLAINT (PAC)(DE)
       -against-                    :   ECF CASE
                                    :
                                    :   PLAINTIFF DEMANDS
AGENCYSACKS, INC. and ANDREW        :   TRIAL BY JURY
M. SACKS,                           :
                                    :
              Defendants.           :
                                    :
------------------------------------x
```

Plaintiff Shawn Shields, by his attorneys, Bantle & Levy LLP, alleges for his complaint against defendants as follows:

## NATURE OF THE ACTION

1. This is an action for employment discrimination based on disability or perceived disability, in violation of the the New York State Human Rights Law, New York Executive Law §290 et seq., (the "Executive Law"), and the New York City Administrative Code §8-101 et seq., (the "Administrative Code"), and for failure to provide welfare benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 et seq. Plaintiff seeks declaratory and injunctive relief and damages.

## JURISDICTION AND VENUE

2. This suit is brought and jurisdiction lies

pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§1132 and 1140. Jurisdiction is also predicated upon the supplemental jurisdiction of this Court.

3.  Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the unlawful acts and omissions giving rise to claims alleged herein were committed within the district of the United States District Court, Southern District of New York.

4.  Plaintiff has served a copy of this complaint with the Corporation Counsel for the City of New York Law Department and the New York City Commission on Human Rights as required under New York City Administrative Code, §8-502.

**PARTIES**

5.  Plaintiff Shawn Shields, is a citizen of the United States and the State of New York who currently resides at 75 West End Avenue, New York, New York.

6.  At all times relevant to the adverse employment actions complained of in this action, plaintiff has been an individual with a disability as that term is defined in §292(21)(c) of the New York Executive Law and as that term is defined by in §8-102(16) of the New York City Administrative Code.  Specifically, Shields had been diagnosed with a malignant melanoma and was undergoing treatment for this medical condition.

7.  Shields was employed by defendant AgencySacks,

Inc. ("AgencySacks" or the "Company") as a full-time employee from in or about March 17, 2005 to September 30, 2005.

8.   Upon information and belief, defendant AgencySacks, Inc. is a New York corporation with its principal place of business at 345 Seventh Avenue, New York, New York 10001.  At all times relevant herein, AgencySacks was and is an advertising agency primarily rendering services to providers of globally recognized luxury brands.

9.   Upon information and belief, defendant Andrew M. Sacks ("Sacks") is and was at all times relevant hereto President of AgencySacks.

10.   Upon information and belief, Sacks was and is a citizen of the United States and a resident of the State of New York.

11.   All defendants are persons within the meaning of New York Executive Law §292(1), and New York City Administrative Code §8-102(1), and AgencysSacks is an employer within the meaning of New York City Administrative Code §§8-102(5) and 8-107.

12.   At all times relevant herein AgencySacks maintained an employee benefits plan pursuant to which certain of its employees were provided health and other employee benefits.

## STATEMENT OF FACTS

13.   Plaintiff commenced employment with AgencySacks as

a freelance copywriter in or about December, 2004.

14. While working as a freelance copywriter for AgencySacks, Shields primary function was to write copy in connection with the Company's efforts to secure an exclusive account with the Wustof knife company.

15. In large part due to Shields efforts, AgencySacks secured the Wustof account, which was the largest account secured the Company had secured in over one year.

16. Plaintiff was retained by AgencySacks as a full-time, salaried employee on or about March 17, 2005 and named the Agency's Associate Creative Director.

17. Pursuant to the terms and conditions of the offer of employment presented to Shields by AgencySacks on March 17, 2005, and accepted by Shields, Shields was to receive, <u>inter alia</u>, a base annual salary of $100,000, an annual bonus in an amount to be determined, two weeks annual vacation, and medical and dental benefits under the Agency's welfare benefits plan commencing ninety days after Shields commencement of full-time, salaried employment.  Shields also was to become eligible to participate in AgencySacks's 401K program after completion of one year of employment.

18. Throughout his employment at AgencySacks, Shields excelled in the performance of his duties.  As Associate Creative Director, Shields participated in creating intelligent,

innovative and thoughtful advertising campaigns for a number of the Agency's clients and prospective clients.

19. Despite not receiving overtime pay, Shields consistently worked in excess of fifty to sixty hours per week in order to maximize the quantity and quality of his contributions to AgencySacks's creative team.

20. Among his accomplishments as Associate Creative Director, Shields played a primary role in AgencySacks's completion of approximately two years worth of advertising copy for Wustof.

21. Shields received uniformly positive feedback on his performance and was highly regarded by members of AgencySacks's staff, including being told several times by the President of the company himself that he was "the greatest writer [the President] had ever worked with."

22. Following the completion of ninety days of employment with AgencySacks, Shields became eligible to receive medical and dental benefits from AgencySacks.

23. Upon information and belief, the medical and dental benefits that AgencySacks offered to its employees while Shields was employed by the Company constituted a qualified employee welfare benefit plan as defined by ERISA.

24. Upon information and belief, pursuant to the terms of its employee welfare benefits plan, AgencySacks covered

seventy-five (75%) of the costs of medical and dental benefits for its eligible employees.

25. On or about June 15, 2005, Shields requested the benefits enrollment forms from AgencySacks, filled them out and submitted them to Joseph Fusilli, an AgencySacks's manager involved in management of the Company's employee benefits plan.

26. Shortly after he submitted the benefits enrollment forms, Shields was assured by Fusilli that he would be notified that he had begun to receive benefits pursuant to the Company's welfare benefit plan.

27. Shields received no such notification from Fusilli, or any member of management at AgencySacks, and did not begin to receive medical or dental benefits under the Company's plan.

28. Throughout the summer of 2005, Shields obtained medical insurance at his personal expense.

29. During this time, Shields made several inquiries to AgencySacks regarding the status of his request for benefits under the Company's welfare benefits plan.

30. Shields received no formal response to these inquiries.

31. In or about August 2005, Shields contacted Ann Willaum, Sacks's executive assistant, and advised her that he still had not received notice from the Company that he was being

covered under the Company's medical and dental benefits plan.

32. In response to this inquiry, Willaum provided Shields a new set of benefits enrollment forms with a note advising him to complete them and submit them to Fusilli.

33. Shields promptly completed the benefits enrollment forms and hand delivered them to Fusilli.

34. Despite having resubmitted the benefits enrollment forms, Shields did not begin to receive coverage under the Company's medical and dental benefits plan.

35. In or about late August or early September 2005, while on vacation in Mexico, Shields became concerned about a discoloration on his torso.

36. On or about September 13, 2005, Shields had a biopsy performed on the discolored tissue.

37. On or about September 16, 2005, Shields was diagnosed with malignant melanoma, and was advised by a doctor to have the melanoma surgically removed as soon as possible.

38. In or about the week of September 16, 2005, Shields approached Willaum and/or Fusilli and again inquired regarding AgencySacks's continued failure to cover him under the Agency's medical and dental benefits plan.

39. In response to Shields's inquiry, Fusilli requested that Shields resubmit certain benefits forms and then see him to discuss the benefits issue.

40.  Despite again submitting the forms requested by Fusilli, Shields remained without benefits at AgencySacks as of the termination of his employment with the Company on September 30, 2005.

41.  Shields never received benefits from AgencySacks under the Company's welfare benefits plan.

42.  On or about September 19, 2005, Shields advised Creative Director Lynn Kokorsky ("Kokorsky") of his medical condition by email correspondence, including that surgery would force him to miss work on September 21, and, possibly September 22, 2005.

43.  On Wednesday, September 21, 2005, Shields had surgery to remove the melanoma.  The surgery required removal of approximately one square inch of tissue from Shields's torso.

44.  At the completion of the surgery, Shields was advised by his doctor to wear a sling on his left arm so as to avoid aggravation of the surgical wound and to take pain medication as needed.

45.  On Thursday, September 22, 2005, Shields was unable to go to work due to severe post-operative pain in the surgical area.

46.  Shields was contacted at home on September 22 by Kokorsky and other AgencySacks's employees and urged to work on copy for a pitch the Agency was preparing.

47. Despite the post-operative pain he was experiencing, Shields complied with these requests and maintained communication with Kokorsky and other AgencySacks's employees throughout the day.

48. Despite continuing to experience substantial pain and tenderness in the surgical area, Shields worked a full day at AgencySacks on Friday, September 23, 2005.

49. By Monday, September 26, 2005, the post-operative pain Shields was experiencing had not subsided.

50. By email correspondence on the morning of September 26, 2005, Shields advised, <u>inter alia</u>, Sacks and Kokorsky that due to his medical condition he would need to come into the office approximately one hour late for the next few weeks.

51. In his September 26 email correspondence, Shields assured AgencySacks that his altered work schedule would not affect his productiveness and that he would work additional hours in the evenings to make up for any missed time.

52. Neither defendant Sacks nor Kokorsky objected to Shields's request for this reasonable accommodation.

53. From September 26, 2005 through September 30, 2005 (the "Week of September 30"), Shields maintained a revised work schedule in which he arrived at AgencySacks at or about 10:30 a.m., remained at the office into the evening, and if necessary,

worked additional hours at home.

54. During the week of September 30, Shields capably performed his responsibilities at AgencySacks.

55. During the Week of September 26, Shields received positive feedback from, inter alia, Kokorsky for making positive contributions on a variety of Company projects.

56. During the Week of September 26, Sacks questioned Shields's regarding his medical condition.

57. Shields promptly responded to Sacks's inquiry, advising him that it appeared that he would need at least one additional surgical procedure before his medical condition was fully treated.

58. On September 30, 2005, Shields was abruptly terminated by Sacks.

59. When notifying Shields of the termination, Sacks specifically referenced Shields's ongoing medical issues, and told him, "this thing of you coming in late is a deal breaker."

60. At no time prior to Shields's termination did Sacks, Kokorsky or any other member of AgencySacks management tell Shields that his revised work schedule was creating problems for the Company or reducing his effectiveness as an employee.

61. At the termination meeting and on at least one occasion thereafter, Sacks told Shields that he could work for AgencySacks on a freelance basis once he was well.

62. Sacks purported explanation for Shields's termination, and the offer of future freelance opportunities, was an admission that Shields was terminated due to discrimination based on a disability or perceived disability.

63. Upon information and belief, defendants' decision to terminate Shields's employment also was motivated by Shields's request to receive the medical and dental benefits that he had been unlawfully denied by AgencySacks.

64. When Shields's employment was terminated, defendant failed to provide plaintiff with the option of electing to pay for post-termination medical and dental insurance coverage, as required by the Consolidated Omnibus Reconciliation Act (COBRA), in violation of ERISA, 29 U.S.C.§§ 1161 and 1162.

65. As a consequence of the foregoing, Shields has been unlawfully terminated from his employment with AgencySacks, and has thereby been denied continuing opportunities for promotion, training, advancement, recognition, and increased compensation.

66. As a result of defendants' unlawful discriminatory employment practices, Shields has suffered a loss of income and benefits.

67. As a result of defendants' unlawful acts, Shields has sustained serious pain and suffering, and severe mental and emotional harm and distress.

68. Defendants' acts were performed willfully, intentionally, and with reckless indifference to Shields's protected rights.

## COUNT I

69. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 68 as if fully set forth herein.

70. AgencySacks failure to provide plaintiff with medical and dental insurance through its benefits plan covering its employees, and failure to provide plaintiff with the right to elect to receive benefits post-termination, constitutes violation of ERISA and gives rise to a claim pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

## COUNT II

71. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 70 as if fully set forth herein.

72. AgencySacks's termination of plaintiff's employment constitutes retaliation against plaintiff for the purpose of interfering with the attainment of his rights under the Company's welfare benefits plan, and violates §510 of ERISA, 29 U.S.C. §1140.

## COUNT III

73. Plaintiff repeats and realleges each and every

allegation made in paragraphs numbered 1 through 71 as if fully set forth herein.

74. By their actions and omissions, defendants have discriminated against plaintiff on account of a disability or perceived disability with respect to compensation, benefits and terms, conditions and privileges of employment, in violation of the New York Executive Law, §290 et seq., commonly known as the New York Human Rights Law.

75. Defendant Sacks violated New York Executive Law §296(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined above.

76. As a result of defendants' discrimination against him, plaintiff has suffered damages, including without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to his reputation and career.

## COUNT IV

77. Plaintiff repeats and realleges each and every allegation made in paragraphs numbered 1 through 76 as if fully set forth herein.

78. By their actions and omissions, defendants have discriminated against plaintiff on account of his disability or

perceived disability with respect to compensation, benefits and terms, conditions and privileges of employment, in violation of New York City Administrative Code §8-107(1)(a).

79.  Defendant Sacks violated New York City Administrative Law §296(6) by aiding, abetting, inciting and coercing the unlawful discrimination outlined above.

80.  As a result of defendants' discrimination against him, plaintiff has suffered damages, including without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, compensatory damages, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to his reputation and career.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant judgment for plaintiff and that it order and award plaintiff the following relief against defendants:

(1)  A declaratory judgment that the acts, policies, practices and procedures complained of herein violated plaintiff's rights as secured by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001 et seq.;

(2)  A declaratory judgment that the acts, policies, practices and procedures complained of herein violated plaintiff's rights as secured by the New York Executive Law, §290 et seq., and the New York City Administrative Code, §8-101 et

seq.;

  (3) An injunction restraining and enjoining defendants from engaging in further violations of ERISA and further discriminatory acts in violation of the New York Executive Law and the New York City Administrative Code;

  (4) Damages in the form of (a) back pay with interest based on plaintiff's appropriate compensation had he not been discriminated against; (b) front-pay; (c) reimbursement for lost medical and dental benefits; and (d) reimbursement for lost experience, training opportunities and other benefits, in an amount to be shown at trial;

  (5) Compensatory damages for his emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount not less than $1,000,000;

  (6) Punitive damages in an amount not less than $2,000,000;

  (7) Attorneys fees;

  (8) Costs and disbursements;

  (9) Interest; and

  (10) Such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands trial by jury.

Dated:   New York, New York
         February 7, 2006

                                   BANTLE & LEVY LLP

                                   By:_____
                                       Robert L. Levy (RL-1633)

                                   817 Broadway
                                   New York, New York 10003
                                   (212) 228-9666
                                   Attorneys for Plaintiff